IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| SPRINT SOLUTIONS, INC. and SPRINT COMMUNICATIONS COMPANY, L.P., <br><br> Plaintiffs, <br><br> v. <br><br> IRVIN BRYAN LAFAYETTE, EDDIE D. DANLEY, EMANUEL LAFAYETTE, MARCUS S. HALL, JOHN DOES 1-2, and JANE DOES 1-20, <br><br> Defendants. | No. 2:15-cv-2595-SHM-cgc |

## ORDER

Before the Court is Plaintiffs Sprint Solutions, Inc. and Sprint Communications Company L.P.'s (collectively, "Plaintiffs" or "Sprint") unopposed September 12, 2017 Motion for Default Judgment and Permanent Injunction Against Defendants Irvin Bryan Lafayette, Eddie D. Danley, Emanuel Lamont Lafayette, and Marcus S. Hall (collectively, "Defendants") ("the Motion"). (ECF No. 47.) Oral argument is unnecessary. Fed. R. Civ. P. 78(b).

For the following reasons, the Motion is GRANTED in part and DENIED in part.

## I.  Background

Plaintiffs sell wireless phones under the brands Sprint, Boost Mobile, Virgin Mobile, payLo, and Assurance Wireless for use on Sprint's wireless network.  (Compl., ECF No. 1 ¶ 1.) Plaintiff Sprint Communications Company, L.P. owns federal trademark registrations for the stylized Sprint® marks, which are depicted below:



(Id. ¶ 30.)

Plaintiff Sprint Solutions, Inc. has been assigned the right to use and enforce the Sprint® marks.  (Id.)  Plaintiffs have also been assigned the right to use and enforce the standard character and stylized Virgin Mobile, payLo, Assurance Wireless, and Boost Mobile trademarks, which are depicted below:



(Id. ¶ 31.)

Plaintiffs sell their phones for substantially less than their manufacture price.  (Id. ¶ 22.)  Plaintiffs earn revenue from the sale of Sprint's wireless service, which customers

must use to transmit and receive calls, texts, and data on Sprint phones. (Id.) Plaintiffs offer reduced phone prices only if the phones are intended for use on the Sprint wireless network. (Id. ¶ 26.) In addition to subsidizing the phones, Plaintiffs offer customers the option of leasing the phones or purchasing them through installment payments. (Id. ¶ 23.) Those subsidies and investment programs are not offered by telecommunications carriers outside the United States. (Id.) Manufacturers that produce wireless phones for Plaintiffs install proprietary software to prevent the phones from being used outside the Sprint network. (Id. ¶ 26.)

Sprint phones are also sold subject to certain terms and conditions, which restrict the resale and use of the phones. (Id. ¶ 24.) Those terms and conditions are set out in printed inserts that are included with the purchase of every Sprint phone. (Id.) Customers may manifest their agreement to these terms and conditions by signing a written contract, orally acknowledging their agreement over the phone, clicking appropriate buttons on a website, or, in the case of prepaid services, by purchasing a phone in a package conspicuously indicating that the purchase or use constitutes the customer's agreement. (Id. ¶ 25.)

Plaintiffs recently discovered that, although large quantities of their phones are purchased throughout the United States, a significant number are not being used on the Sprint network. (Id. ¶ 34.)[1]

Plaintiffs also recently discovered that Defendants acquired Sprint phones directly or indirectly through co-conspirators by illicit means, such as through unauthorized orders on existing Sprint accounts and diverting Sprint phones from their intended destinations. (Id.) Defendants then sold the phones for a substantial profit and shipped them directly overseas, where they can be used on other wireless carriers' networks, or shipped to other domestic traffickers, who add them to larger shipments headed overseas. (Id.)[2] Plaintiffs refer to this conduct as a "Handset Theft and Trafficking Scheme." (Id. ¶ 1.)

As part of the alleged scheme, Defendants call Sprint customer care and falsely identify themselves as Sprint employees who need access to a particular Sprint account for a legitimate purpose. (Id. ¶ 40.) If Defendants succeed in acquiring account access, they place another call to Sprint and represent themselves as the account holder or person authorized to access the account, place orders, and make changes. (Id. ¶

---

[1] Plaintiffs do not provide a specific date of discovery.
[2] Plaintiffs do not provide a specific date of discovery.

41.)  Defendants use this unauthorized access to receive

upgrades for new Sprint phones, add lines of service, and place

unauthorized orders for new mobile devices.  (Id.)  Any cost is

charged to the legitimate customer's account, without the

customer's knowledge or consent.  (Id.)  Defendants have the

merchandise shipped to addresses in Memphis, Tennessee, to

which they have access, and then resell the merchandise.  (Id.

¶ 42.)

The alleged scheme requires Defendants to call Sprint

thousands of times to change account information and to steal

equipment and services from Sprint and its customers.  (Id. ¶

45.)

Between March 2015 – August 2015, Sprint's investigators

observed Defendants and their co-conspirators obtain shipments

and subsequently advertise devices matching the shipment

descriptions.  (See id. ¶¶ 45, 49, 50-52, 54.)

Sprint filed a complaint against Defendants on September

10, 2015.  (ECF No. 1.)  The complaint asserts fourteen (14)

counts: (1) unfair competition, (2) tortious interference with

existing and prospective business relationships, (3) common law

and statutory inducement of breach of contract (Tenn. Code Ann.

§ 47-50-109), (4) conspiracy to defraud, (5) unjust enrichment,

(6) common law fraud and fraudulent misrepresentation, (7)

trafficking in computer passwords (18 U.S.C. § 1030(a)(6)), (8) unauthorized access (18 U.S.C. § 1030(a)(5)(C)), (9) unauthorized access with intent to defraud (18 U.S.C. § 1030(a)(4)), (10) federal trademark infringement (15 U.S.C. § 1114)), (11) federal common law trademark infringement and false advertising (15 U.S.C. § 1125)), (12) contributory trademark infringement, (13) conversion, and (14) unfair and deceptive acts and practices (Tenn. Code Ann. §§ 47-18-101, et seq.).  The complaint seeks compensatory, consequential, statutory, and special damages; attorneys' fees and costs, and permanent injunctive relief.

Defendants have not responded to the complaint, and the deadline to do so has passed.  Fed. R. Civ. P. 12(a)(1)(A). Defendants have not appeared.

On Sprint's motion, the clerk of court filed an entry of default against Defendants Irvin Bryan Lafayette and Eddie D. Danley on November 10, 2015.  (ECF Nos. 24-27.)  On Sprint's motion, the clerk of court filed an entry of default against Defendant Emanuel Lamont Lafayette on April 29, 2016.  (ECF Nos. 36-37.)  On Sprint's motion, the clerk of court filed an entry of default against Defendant Marcus S. Hall on June 9, 2016.  (ECF Nos. 40-41.)

On September 12, 2017, Sprint moved for default judgment. (ECF No. 47.)  Defendants have not filed a response to Sprint's motion for default judgment, and the deadline to do so has passed.

## II.  Jurisdiction & Choice of Law

### A. Jurisdiction

A court's default judgment is invalid unless it has subject-matter and personal jurisdiction.  See, e.g., Citizens Bank v. Parnes, 376 F. App'x 496, 501 (6th Cir. 2010) (citing Kroger Co. v. Malease Foods Corp., 437 F.3d 506, 510 (6th Cir. 2006)).

The Court has subject-matter jurisdiction over Sprint's federal trademark infringement claims, 15 U.S.C. §§ 1114 and 1125, and Computer Fraud and Abuse Act (CFAA) claims, 18 U.S.C. § 1030.  Under 28 U.S.C. §§ 1331, United States district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States."  Sprint's federal trademark infringement claims and CFAA claims arise under the laws of the United States.

The Court has supplemental jurisdiction over Sprint's state-law claims under 28 U.S.C. § 1367.  Those claims derive from a "common nucleus of operative fact" with the federal-law

claims.  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725
(1966); Soehnlen v. Fleet Owners Ins. Fund, 844 F.3d 576, 588
(6th Cir. 2016); see also 28 U.S.C. § 1367(a).

"Due process requires proper service of process for a
court to have jurisdiction to adjudicate the rights of the
parties." O.J. Distrib., Inc. v. Hornell Brewing Co., 340 F.3d
345, 353 (6th Cir. 2003).  Plaintiff bears the burden of
exercising due diligence to perfect service of process and to
show that proper service has been made.  See Byrd v. Stone, 94
F.3d 217, 219 (6th Cir. 1996).

Default judgment is improper where service has not been
effected.  See, e.g., O.J. Distrib, 340 F.3d at 353 ("Due
process requires proper service of process for a court to have
jurisdiction to adjudicate the rights of the parties.
Therefore, if service of process was not proper, the court must
set aside an entry of default." (citation omitted)).

Summonses issued for Defendants Irvin Bryan Lafayette,
Emanuel Lafayette, Eddie D. Danley, and Marcus S. Hall on
September 10, 2015.  (ECF Nos. 7-10.)  The propriety of service
must be evaluated separately for each Defendant.  See O.J.
Distrib., 340 F.3d at 353.

### 1. Defendants Eddie D. Danley and Irvin Bryan Lafayette

Affidavits of service were filed as to Defendants Eddie D. Danley and Irvin Bryan Lafayette on October 13, 2015. (ECF Nos. 11-12.) Those affidavits demonstrate that service was made by delivering a copy of the summons at each Defendant's dwelling or usual place of abode with someone of suitable age and discretion who resided there. (Id.) Service of process was proper for Defendants Eddie D. Danley and Irvin Bryan Lafayette.

### 2. Defendant Emanuel Lafayette

A summons was returned executed as to Defendant Emanuel Lafayette on March 25, 2016. (ECF No. 33.) The proof of service is blank. (Id. at 416.) The person who signed the summons is Eneka Lafayette. (Id. at 417.)

Plaintiffs have failed to satisfy their burden to establish proper service on Defendant Emanuel Lafayette. Eneka Lafayette is not a party to this action. It is unclear whether Eneke Lafayette resided at Defendant Emanuel Lafayette's dwelling or usual place of abode. Service of process is improper under Federal Rule of Civil Procedure 4(e)(2). It is also improper under Federal Rule of Civil Procedure 4(e)(1) because it fails to satisfy Tennessee service laws.

Tennessee Rule of Civil Procedure 4B "permits service on
the secretary of state as the defendant's agent for service of
process, whenever it is constitutionally permissible for the
courts of the state to exercise personal jurisdiction over the
defendant." Thompson v. Ameriquest Mortg. Co., No. W2011-
00501-COA-R3CV, 2011 WL 6016892, at *1 (Tenn. Ct. App. Dec. 5,
2011) (quoting Robert Banks, Jr. & June F. Entman, Tennessee
Civil Procedure § 2-5(b), at 2-64 to -65 (3d ed. 2009)).  Under
Rule 4B, the plaintiff must deliver the original and a copy of
the process, duly certified, to the Tennessee Secretary of
State, who then sends it by registered or certified return
receipt mail to the defendant.  Tenn. R. Civ. P. 4B(2).  Rule
4B provides:

> Acceptance of such registered or certified mail by
> any member of the addressee's family, over the age of
> sixteen (16) years and residing in the same dwelling
> with him, shall constitute a sufficient delivery
> thereof to the addressee.

Tenn. R. Civ. P. 4B(5).

Eneka Lafayette is unidentified.  Without more, service of
process was improper as to Defendant Emanuel Lafayette.
Plaintiff's Motion against him is DENIED.

### 3. Defendant Marcus S. Hall

The original summons issued for Defendant Marcus S. Hall
listed Hall's address as: 2765 Pickering Drive, Apt.3, Memphis,

Tennessee 38115.  (ECF No. 10.)  A second summons issued for
Defendant Hall on February 16, 2016.  (ECF No. 31-1.)  That
summons listed the original Memphis address and added three
addresses in Georgia.  (Id.)

On April 4, 2016, Sprint filed what appears to be a Notice
of Service.  (ECF No. 34.)  It says that the Notice and summons
were sent to Defendant Hall at one of the three Georgia
addresses listed in the second summons.  (Id.)  The Notice is
addressed to Defendant Hall from the Tennessee Secretary of
State.  (Id.)  The filing also contains a scanned copy of the
second summons and a letter addressed to Defendant Hall that
has a stamp: "Return to Sender. Unclaimed."  (Id.)

On May 16, 2016, Sprint filed a "Summons Returned
Executed" as to Defendant Hall.  (ECF No. 38.)  The filing has
a copy of the second summons and an Affidavit and Endorsement
by an agent of the Tennessee Secretary of State.  (Id.)  The
Affidavit states that a notice of service and summons were sent
to Defendant Hall and addressed to a second Georgia address:
370 Northside Drive NW, Atlanta, GA, 30318.  (Id.)  The
certified mail was allegedly returned undelivered, containing
the notation: "Return to Sender.  Unclaimed."  (Id.)  Sprint
filed this document twice.  (See ECF No. 39.)  The Affidavit
does not state whether the Notice was sent to a specific

apartment number.  The second summons lists the second Georgia
address with two separate apartments:  Apt. 2303 and Apt. 2242.
(Id. at 446.)  It is unclear from the Affidavit whether the
Notice and summons was delivered to either of those apartments.
Sprint has not filed any notice or affidavit as to the Memphis
address listed on the second summons.

Sprint's attempts do not constitute proper service under
Federal Rule of Civil Procedure 4(e)(2) or Tennessee law.  See
Fed. R. Civ. P. 4(e)(1).

Tennessee Rule of Civil Procedure "4B(1), in effect,
permits service on the secretary of state as the defendant's
agent for service of process, whenever it is constitutionally
permissible for the courts of the state to exercise personal
jurisdiction over the defendant."  Thompson, 2011 WL 6016892,
at *1 (quoting Tennessee Civil Procedure § 2-5(b), at 2-64 to -
65).  Rule 4B(7) provides that, if a plaintiff attempts to make
service on the secretary of state as the defendant's agent, and
if the secretary of state receives notice that its registered
or certified mail is undelivered, service may be complete if
(1) the undelivered mail, (2) affidavit, and (3) a copy of the
notice are part of the record.  Tenn. R. Civ. P. 4B(7).

None of Sprint's filings addressing Defendant Hall
satisfies Rule 4B(7).  The April 2016 filing does not include

an affidavit.  (See ECF No. 34.)  The May 2016 filing does not state to which apartment, if any, the summons and notice were sent, and does not include the undelivered mail or a copy of the notice.  (See ECF No. 38-39.)  Service of process was improper as to Defendant Marcus S. Hall.  Plaintiff's Motion against him is DENIED.

## B. Choice of Law

Plaintiffs explicitly invoke Tennessee law.  (See ECF No. 1; see also ECF No. 47-1.)  Defendants have not challenged the application of Tennessee law.  The Court will apply Tennessee substantive law.  See GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998) (finding courts need not analyze choice-of-law questions sua sponte).

## III. Standard of Review

Rule 55(b)(2) of the Federal Rules of Civil Procedure governs default judgments.  See Fed. R. Civ. P. 55(b).  "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Once the Court Clerk enters default, all well-pleaded allegations are deemed admitted, except those concerning damages.  See Antoine v. Atlas Turner, Inc., 66 F.3d 105, 110-11 (6th Cir. 1995).

As to damages, "[t]he allegations in the complaint . . . are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Vesligaj v. Peterson, 331 F. App'x 351, 355 (6th Cir. 2009) (quoting Credit Lyonnais Sc. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)); see also Fed. R. Civ. P. 55(b)(2). A court may reach a reasonable certainty on the correct amount of damages from the record without conducting a hearing. See Vesligaj, 331 F. App'x at 355.

A hearing under Rule 55(b)(2) is not necessary where there is sufficient evidence in the record to make a determination as to damages. See, e.g., id; Boards of Trustees of Ohio Laborers' Fringe Benefit Programs v. Akron Insulation & Supply, Inc., No. 2:15-CV-2864, 2017 WL 749202, at *3 (S.D. Ohio Feb. 27, 2017).

## IV. Analysis

### A. Causes of Action

#### 1. Count 1: Common Law Unfair Competition

To establish a claim for unfair competition under Tennessee law, a plaintiff must establish that: (1) the defendant engaged in conduct that "passed off" its organization or services as those of the plaintiff; (2) in engaging in such conduct, the defendant acted with intent to deceive the public

14

as to the source or services offered or authority of its organization; and (3) the public was actually confused or deceived as to the source of the services offered or authority of its organization. Sovereign Order of St. John of Jerusalem, Inc. v. Grady, 119 F.3d 1236, 1243 (6th Cir. 1997). Tennessee's law of unfair competition differs from the federal law of unfair competition (i.e., the Lanham Act § 43(a)) only in that Tennessee law requires a showing of "actual confusion," but the latter requires only a showing of a "likelihood of confusion." Id.

The complaint alleges that Defendants' actions were intentional. (Compl., ECF No. 1 ¶ 74.) Defendants, in some instances, resold Sprint phones to customers who believed the Sprint phones included all the attendant benefits, but the phones were no longer under warranty or did not work on Sprint's network because of how the phones were acquired or how they were altered. (Id. ¶ 61.)

The complaint also alleges that "Defendants' conduct leads to post-sale confusion by causing consumers who purchase Sprint Phones altered by Defendants to believe that they are purchasing handsets approved by Sprint that can be activated on the Sprint network and containing original warranties." (Id. ¶ 205.)

15

Because these well-pled allegations are admitted, see
Antoine, 66 F.3d at 110-11, Plaintiffs have sufficiently shown
Defendants engaged in conduct that "passed off" Sprint's
services, acted with an intent to deceive the public as to the
source of the services offered or authorized, and facilitated
actual confusion.  Plaintiffs are entitled to default judgment
on this claim.

**2. Count 2: Tortious Interference with Existing and Prospective Business Relationships**

To state a claim for interference with business
relationships, the plaintiff must show: "(1) an existing
business relationship with specific third parties or a
prospective relationship with an identifiable class of third
persons; (2) the defendant's knowledge of that relationship and
not a mere awareness of the plaintiff's business dealings with
others in general; (3) the defendant's intent to cause the
breach or termination of the business relationship; (4) the
defendant's improper motive or improper means." Trau-med of
America v. Allstate Ins. Co., 71 S.W.3d 691, 701 (Tenn. 2002);
S. Transportation, Inc. v. Lyft, Inc., No. 16-02669, 2017 WL
2838207, at *3 (W.D. Tenn. June 30, 2017).

Plaintiffs sufficiently establish their claim for tortious
interference with business relationships.  Plaintiffs allege
that Sprint had economic relationships with its authorized

16

dealers, retailers, and prospective customers that carried a high probability of future economic benefit. (Compl., ECF No. 1 ¶¶ 77-80.) Plaintiffs allege that, by intentionally and unlawfully acquiring Sprint phones for resale, Defendants' scheme creates an insufficient supply of Sprint phones. (<u>Id.</u> ¶¶ 81-82.) That insufficient supply "substantially harm[s] Sprint and its relationship with its authorized dealers and retailers because Sprint is unable to supply dealers with sufficient Phones to satisfy the demands from legitimate consumers." (<u>Id.</u> ¶ 83.) Plaintiffs allege that Defendants knew of these relationships and understood that their conduct would disrupt these relationships. (<u>Id.</u> ¶¶ 84, 86.)

Because these well-pled allegations are admitted, <u>see</u> <u>Antoine</u>, 66 F.3d at 110-11, Plaintiffs have established tortious inference with business relationships. Plaintiffs are entitled to relief on this claim.

### 3. Count 3: Common Law and Statutory Inducement of Breach of Contract

The elements of a claim for common law or statutory inducement to breach a contract under § 47-50-109 of the Tennessee Code are identical.

> [T]o establish either a claim for common law or
> statutory inducement to breach a contract, a party
> must establish that (1) a legal contract existed; (2)
> the defendant was aware of the contract; (3) the

17

defendant intended to induce a breach of contract; (4) the defendant acted with malice; (5) a breach of the contract occurred; (6) the breach was a proximate result of the defendant's conduct; and (7) the breach injured the plaintiff.

<u>Givens v. Mullikin</u>, 75 S.W.3d 383, 405 (Tenn. 2002).

The complaint alleges that there were legal contracts between Sprint and its authorized dealers, retailers, and customers. (Compl., ECF No. 1 ¶¶ 92-93.) The complaint alleges that Defendants knew of those contracts and knowingly and intentionally facilitated a conspiracy to induce breach of those contracts. (<u>Id.</u> ¶¶ 94-96.) The complaint alleges that Defendants acted with malice by willfully inducing breach of contract. <u>Prime Co. v. Wilkinson & Snowden, Inc.</u>, No. W2003-00696-COA-R3CV, 2004 WL 2218574, at *4 (Tenn. Ct. App. Sept. 30, 2004)( "[M]alice is 'the wilful violation of a known right.'" (quoting <u>Crye-Leike Realtors, Inc. v. WDM, Inc.</u>, No. 02A01-9711-CH-00287, 1998 WL 651623 (Tenn. Ct. App. Sept. 24, 1998)). The complaint alleges that Defendants induced the breach of contracts between Sprint and its authorized dealers, retailers, and customers. (Compl., ECF No. 1 ¶ 95.) The complaint represents that "Sprint has been proximately damaged and continues to be damaged as a result of Defendants' interference." (<u>Id.</u> ¶ 98.)

Because these well-pled allegations are admitted, see
Antoine, 66 F.3d at 110-11, Plaintiffs have established
statutory and common law inducement of breach of contract.
Plaintiffs are entitled to relief on this claim.

### 4. Count 4: Conspiracy to Defraud

To prove conspiracy to defraud under Tennessee law, the
plaintiff must establish:

> a common purpose, supported by a concerted action to
> defraud, that each has the intent to do it, and that
> it is common to each of them, and that each has the
> understanding that the other has the purpose.  The
> agreement need not be formal, the understanding may
> be a tacit one, and it is not essential that each
> conspirator have knowledge of the details of the
> conspiracy.

Taylor v. George, No. E201400608COAR3CV, 2015 WL 1218658, at *7
(Tenn. Ct. App. Mar. 16, 2015) (quoting Dale v. Thomas H.
Temple Co., 208 S.W.2d 344 (Tenn. 1948)).

The complaint alleges that Defendants engaged in a common
purpose to unlawfully acquire, market, and sell unlawfully
acquired and altered Sprint phones.  (Compl., ECF No. 1 ¶ 101.)
The complaint also alleges that "[e]ach Defendant knowingly
agreed to engage, and did engage, in one or more overt acts in
pursuit of the conspiracy. . . ."  (Id. ¶ 102.)

Defendant Emanuel Lafayette regularly communicated with
the co-Defendants and called Sprint to check on the shipment

status of fraudulent orders that Defendants had placed on legitimate Sprint customer accounts and that Defendants were having shipped to themselves.  (Id. ¶ 47.)  Defendant Emanuel Lafayette posted pictures of himself on his Facebook page prominently displaying new phones for sale that matched the make and model of the recently delivered Sprint phones.  (Id.)

Defendant Irvin Lafayette and another co-conspirator retrieved a fraudulent delivery from a vacant house and drove to a subsequent location in Memphis, Tennessee, that served as a drop off where the Sprint phones were collected and processed by Defendants and their co-conspirators for resale.  (Id. ¶ 51.)

Defendant Marcus Hall fraudulently ordered Sprint iPhones sent to his residence.  (Id. ¶ 52.)  Those phones were resold by Defendants for a profit.  (Id.)

Because these well-pled allegations are admitted, see Antoine, 66 F.3d at 110-11, Plaintiffs have established conspiracy to defraud.  Plaintiffs are entitled to relief on this claim.

### 5. Count 5: Unjust Enrichment

Under Tennessee law, a plaintiff must prove three elements to recover for unjust enrichment: (1) "[a] benefit conferred

upon the defendant by the plaintiff,' (2) 'appreciation by the
defendant of such benefit,' and (3) 'acceptance of such benefit
under such circumstances that it would be inequitable for him
to retain the benefit without payment of the value thereof.'"
Freeman Indus., LLC v. Eastman Chem. Co., 172 S.W.3d 512, 525
(Tenn. 2005) (citation omitted); Patterson v. Patterson, No.
M201600886COAR3CV, 2017 WL 1433310, at *9 (Tenn. Ct. App. Apr.
20, 2017). "[T]he underlying principle of the doctrine of
unjust enrichment is that a party who receives a benefit that
he or she desires, under circumstances rendering retention of
the benefit without providing compensation inequitable, must
compensate the provider of the benefit." Freeman, 172 S.W.3d
at 525. A benefit is defined as "any form of advantage that
has a measurable value," and it need not be conferred on the
defendant directly by the plaintiff. Id.

The complaint alleges that Defendants fraudulently
acquired Sprint phones and resold those phones for a profit to
potential Sprint customers. (Compl., ECF No. 1 ¶¶ 112-14.)

Because these well-pled allegations are admitted, see
Antoine, 66 F.3d at 110-11, Plaintiffs have established unjust
enrichment. Plaintiffs are entitled to relief on this claim.

## 6. Count 6: Common Law Fraud and Fraudulent Misrepresentation

> Under Tennessee law, a plaintiff must establish four elements to prove fraud: (1) an intentional misrepresentation with regard to a material fact; (2) knowledge of the representation's falsity . . . .; (3) the plaintiff reasonably relied on the misrepresentation and suffered damage; and (4) the misrepresentation relates to an existing or past fact, or, if the claim is based on promissory fraud, the misrepresentation "must embody a promise of future action without the present intention to carry out the promise."

McMillin v. Lincoln Mem'l Univ., No. E2010-01190-COA-R3-CV, 2011 WL 1662544, at *5 (Tenn. Ct. App. May 3, 2011) (quoting Shahrdar v. Global Housing, Inc., 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998)).

The complaint alleges that each of the Defendants, directly or indirectly through co-conspirators, misrepresented to Sprint that he was a Sprint employee, was a legitimate Sprint account holder, or was authorized to access and make changes or place order on Sprint accounts. (Compl., ECF No. 1 ¶ 117.) The Defendants also allegedly misrepresented that the Sprint phones they acquired would be used for legitimate purposes -- to be used on Sprint's wireless network and to be used in accordance with the Terms and Conditions. (Id.) Sprint relied on those misrepresentations and suffered damages as a result. (Id. ¶¶ 120, 122-23.)

Because these well-pled allegations are admitted, <u>see</u> <u>Antoine</u>, 66 F.3d at 110-11, Plaintiffs have established fraud and fraudulent misrepresentation.  Plaintiffs are entitled to relief on this claim.

**7. Counts 7-9: Violation of the Computer Fraud and Abuse Act (CFAA)**

Sprint's complaint states three CFAA claims: (1) Trafficking in Computer Passwords under 18 U.S.C. § 1030(a)(6) (Count 7); (2) Unauthorized Access under 18 U.S.C. § 1030(a)(5)(C) (Count 8); and (3) Unauthorized Access With Intent to Defraud under 18 U.S.C. § 1030(a)(4) (Count 9).

**a. § 1030(a)(4) and § 1030(a)(5)(C)**

To state a claim under § 1030(a)(4), Plaintiffs must allege that Defendants (1) knowingly and with intent to defraud (2) accessed a protected computer without authorization, (3) obtained anything of value, and (4) caused loss and damages aggregating at least $5,000 in any one-year period.  <u>See</u> 18 U.S.C. § 1030(a)(4).  To state a claim under § 1030(a)(5)(C), Plaintiffs must allege that Defendants (1) intentionally accessed a protection computer (2) without authorization and, (3) as a result of such conduct, causes damage and loss.  <u>See</u> 18 U.S.C. § 1030(a)(5)(C).

Sprint phones are connected to and activated on Sprint's protected computer networks when they are originally acquired from Sprint. (Compl., ECF No. 1 ¶¶ 129, 130, 144.) The phones also contain codes and passwords that access this network, allowing consumers to make calls and transmit data. (Id. ¶¶ 126, 143.) The phones act as a "gateway" to Sprint's protected computer networks. (Id. ¶ 126.) Plaintiffs allege that, by using these confidential codes and passwords, Defendants intentionally gain unauthorized access to Sprint's networks for two purposes. (Id. ¶¶ 129, 130.) First, Defendants perform various tests to confirm the phone is, in fact, active on Sprint's wireless network. (Id. ¶ 130.) Second, Defendants unlock the Sprint phone, which requires the manipulation and deletion of the phone's proprietary software as well as unauthorized changes to Sprint's protected computer networks. (Id.) Plaintiffs also allege they have suffered various losses and damages that satisfy the requirements of CFAA.[3] Defendants' actions allegedly caused Sprint to incur investigation costs, harmed the integrity of Sprint's protected computer networks, and deprived Sprint of expected profits.

---

[3] Under CFAA, the term "damage" means "any impairment to the integrity or availability of data, a program, a system, or information[.]" 18 U.S.C. § 1030(e)(8). The term "loss" means "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service[.]" 18 U.S.C. § 1030(e)(11).

(Id. ¶¶ 136-37, 138.)  Plaintiffs also allege that Defendants'
conduct causes injury "substantially in excess of $5,000 over a
one-year period[,]" including economic losses and investigation
costs.  (Id. ¶ 134.)  Because the allegations in the complaint
are admitted, Plaintiffs have established CFFA claims under
§§ 1030(a)(4) and 130(a)(5)(C).

### b. § 1030(a)(6)

Plaintiffs also claim Defendants trafficked passwords in
violation of § 1030(a)(6).  To state a claim under §
1030(a)(6), Plaintiffs must allege that the defendant (1)
knowingly (2) trafficked in (3) a computer password (4) in a
manner that affects interstate commerce.  See 18 U.S.C. §
1030(a)(6).  Plaintiffs allege that Defendants intentionally
transfer confidential Sprint codes and passwords to other
unauthorized users, and that this conduct substantially affects
interstate commerce by allowing the sale and purchase of
counterfeit and unlocked phones throughout the United States.
(Compl., ECF No. 1 ¶¶ 126-29.)  Because the allegations in the
complaint are admitted, Plaintiffs have established a CFAA
claim under § 1030(a)(6).

### 8. Count 10: Federal Trademark Infringement

To establish liability for trademark infringement,
Plaintiffs must show that (1) they own a valid, protectable

25

trademark; (2) Defendants used that mark in commerce without Plaintiffs' consent; and (3) there was a likelihood of confusion.  15 U.S.C. § 1114(1); Ford Motor Co. v. Lloyd Design Corp., 22 F. App'x 464, 468 (6th Cir. 2002).

Under the first-sale doctrine, the "resale by the first purchaser of the original trademarked item is generally neither trademark infringement nor unfair competition."  Brilliance Audio, Inc. v. Haights Cross Communications, Inc., 474 F.3d 365, 369 (6th Cir. 2007) (citing Prestonettes, Inc. v. Coty, 264 U.S. 359, 368-69 (1924)); Tumblebus Inc. v. Cranmer, 399 F.3d 754, 766 (6th Cir. 2005) ("The first-sale doctrine provides that 'a purchaser who does no more than stock, display, and resell a producer's product under the producer's trademark violates no right conferred upon the producer by the Lanham Act.'") (quoting Sebastian Int'l, Inc. v. Longs Drug Stores Corp., 53 F.3d 1073, 1076 (9th Cir. 1995), cert. denied, 516 U.S. 914 (1995)).[4]  "The rationale for the rule 'is that trademark law is designed to prevent sellers from confusing or

---

[4] Whether the first-sale doctrine is an affirmative defense is disputed.  Compare  Hi-Tech Pharm., Inc. v. Demelo, No. CIV. A.1:07CV1934RWS, 2009 WL 901156, at *5 (N.D. Ga. Mar. 31, 2009) (quoting Taylor Made Golf Co. v. MJT Consulting Group, 265 F.Supp.2d 732, 739 (N.D. Tx. 2003))and Am. Airlines, Inc. v. Despegar.com USA, Inc., No. 13-22773-CIV, 2013 WL 12064859, at *4 (S.D. Fla. Nov. 13, 2013)with Samsung Elecs. Am., Inc. v. Yang Kun Chung, No. 3:15-CV-4108-D, 2017 WL 635031, at *4 (N.D. Tex. Feb. 16, 2017).

The Sixth Circuit has not answered this question.  The Court adopts the view that the first-sale doctrine is not an affirmative defense, but "an area of commerce beyond the reach of trademark law."  Hi-Tech Pharm., 2009 WL 901156, at *5 (internal quotation marks and citation omitted).

deceiving consumers about the origin or make of a product, which confusion ordinarily does not exist when a genuine article bearing a true mark is sold.'"  Id. (quoting NEC Elecs. v. CAL Circuit Abco, 810 F.2d 1506, 1509 (9th Cir. 1987)).

The first-sale doctrine is not without exception.  For example, the doctrine provides no defense when the reseller sells trademarked goods that are materially different from those sold by the trademark owner.  Id. at 370.  "To be material, a difference must be 'one that consumers consider relevant to a decision about whether to purchase a product.'"  Id. (quoting Davidoff & CIE, S.A. v. PLD Int'l Corp., 263 F.3d 1297, 1302 (11th Cir. 2001)).  However, "'[b]ecause a myriad of considerations may influence consumer preferences, the threshold of materiality must be kept low to include even subtle differences between products.'"  Id. (quoting Davidoff, 263 F.3d at 1302).  Thus, "the question of materiality is a fact-based inquiry requiring an examination of the products and markets at issue."  Id.

"Sprint uses the Sprint Marks on and in connection with its telecommunications products and services."  (Compl., ECF No. 1 ¶ 32.)  Sprint affixes its marks to the phones.  (Id. ¶ 62.)  Sprint's marks are used in offering phones for use on Sprint's wireless network.

27

Defendants allegedly obtain Sprint phones by ordering them while impersonating Sprint account owners or authorized users. Sprint identifies phones connected with theft, fraud, or other loss, and logs those phones into its system with specific electronic serial numbers -- labeled "Bad ESNs." (Id. ¶ 36.) Sprint phones with Bad ESNs cannot be used on Sprint's network. (Id.) Phones with Bad ESNs are materially different from Sprint phones. Defendants' sale of phones with Bad ESNs causes confusion, because a purchaser from Defendants would be precluded from using the service associated with Sprint's marks. Although the inconsistency between the phones stems from Sprint's practices rather than some technological limitation, the sale of the phones constitutes infringement. See Original Appalachian Artworks, Inc. v. Granada Elecs., Inc., 816 F.2d 68, 73 (2d Cir. 1987) (concluding Cabbage Patch dolls sold abroad were materially different from United States dolls because of "the United States fulfillment houses' inability or unwillingness to process Jesmar's adoption papers or mail adoption certificates").

It is less clear whether an unlocked Sprint phone that does not have a Bad ESN is precluded from using Sprint's network. See Sprint Sols., Inc. v. iCell Guru, Inc., No. 14CV3539FBRER, 2016 WL 3198248, at *3 (E.D.N.Y. June 7, 2016)

("It is not clear, however, whether unlocked phones can be used on Sprint's network. The issue is further complicated by the 2014 change in the law and industry practice. Given those changes, Sprint may not be able to refuse service for an unlocked phone even if it wanted to." (citations omitted)). Sprint's complaint, however, represents that "the process of unlocking and reselling a Sprint Phone voids the manufacturer's warranty on the device." (Compl., ECF No. 1 ¶ 61.) Although Sprint is not the manufacturer, courts have found that reselling products with inferior warranties constitutes a material difference. See, e.g., TracFone Wireless, Inc. v. Bequator Corp., No. 10-CV-21462 WMH, 2011 WL 1427635, at *8 (S.D. Fla. Apr. 13, 2011); Perkins School for the Blind v. Maxi-Aids, Inc., 274 F.Supp.2d 319, 324 (E.D.N.Y. 2003); Movado Group, Inc. v. Matagorda Ventures, Inc., 2000 WL 1855120, *4 (S.D.N.Y. 2000). The material difference exception to the first-sale doctrine applies.

Sprint's complaint sufficiently alleges that (1) it owns valid, protectable trademarks; (2) Defendants used those marks in commerce without Plaintiffs' consent; and (3) there was a likelihood of confusion. Sprint is entitled to default judgment on its federal trademark infringement claim.

## 9. Count 11: Federal Common Law Trademark Infringement and False Advertising

Federal courts do not recognize a claim for federal common law trademark infringement.  See, e.g., Int'l Order of Job's Daughters v. Lindeburg & Co., 633 F.2d 912, 915 (9th Cir. 1980); Jae Enterprises, Inc. v. Oxgord Inc., No. 5:15-CV-228-TBR, 2016 WL 865328, at *13 (W.D. Ky. Mar. 2, 2016).  Sprint cites no case law in this circuit, and the Court finds none, that recognizes a claim of federal common law trademark infringement.  Sprint is not entitled to default judgment on that claim.

The Sixth Circuit considers claims for unfair competition and false advertising under 15 U.S.C. § 1125 using the same factors for trademark infringement claims under 15 U.S.C. § 1114.  The likelihood of confusion is the essence of the claims.  Audi AG v. D'Amato, 469 F.3d 534, 542 (6th Cir. 2006) (explaining that the same test is used to determine "whether there has been trademark infringement [and] unfair competition . . . the likelihood of confusion between the two marks."). The Sixth Circuit has established a five-part test for establishing a false advertising claim under the Lanham Act:

> 1) the defendant has made false or misleading statements of fact concerning his own product or another's; 2) the statement actually deceives or tends to deceive a substantial portion of the intended audience; 3) the statement is material in

that it will likely influence the deceived consumer's purchasing decisions; 4) the advertisements were introduced into interstate commerce; 5) there is some casual link between the challenged statements and harm to the plaintiff.

Grubbs v. Sheakley Group, Inc., 807 F.3d 785, 798 (6th Cir. 2015) (citing American Council of Cert'd Podiatric Physicians and Surgeons v. American Board of Podiatric Surgery, Inc., 185 F.3d 606, 613 (6th Cir. 1999)).

The complaint alleges that Defendants made "false representation[s] that the products and business of Defendants have some connection, association or affiliation with Sprint . . . [which] is likely to mislead the trade and public into believing that Defendants' products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by Sprint." (Compl., ECF No. 1 ¶ 194.) The complaint also alleges that "confused customers, relying on Defendants' representations and the Sprint Marks on the Phones they purchased from Defendants, look to Sprint to resolve their questions. Sprint incurs substantial costs associated with calls to its customer relations and department to resolve the issues created by Defendants." (Id. ¶ 62.)

Sprint has established its claim for false advertising and is entitled to default judgment on that claim.

**10. Count 12: Contributory Trademark Infringement**

"[A] manufacturer or distributor [who] [(1)] intentionally induces another to infringe a trademark, or. . .[(2)] continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement,. . .is contributorially responsible for any harm done as a result of the deceit." Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 853-54 (1982). The Sixth Circuit has expanded application of the contributory infringement doctrine to defendants who were not distributors or manufacturers when the defendant supplied a product or service to the infringer. Coach, Inc. v. Goodfellow, 717 F.3d 498 (6th Cir. 2013) (finding flea market operator contributorially liable for trademark infringement where he continued to supply product or service to vendors he knew or had reason to know were engaging in trademark infringement).

The complaint alleges that "Defendants knowingly aided and enabled distributors and/or sellers of their products to market them to members of the general public in a way that infringes at least one of the Sprint Marks by placing in the hands of distributors and/or sellers an instrument of consumer deception." (Compl., ECF No. 1 ¶ 203.) Plaintiffs have established a claim for contributory trademark infringement and are entitled to default judgment on that claim.

**11. Count 13: Conversion**

In Tennessee, "'a party seeking to make out a prima facie
case of conversion must prove (1) the appropriation of
another's property to one's own use and benefit, (2) by the
intentional exercise of dominion over it, (3) in defiance of
the true owner's rights.'" <u>Thompson v. Thompson</u>, No. W2008-
00489-COA-R3-CV, 2009 WL 637289, at *14 (Tenn. Ct. App. Mar.
12, 2009) (quoting <u>H & M Enters., Inc. v. Murray</u>, No. M1999-
02073-COA-R3-CV, 2002 WL 598556, at *3 (Tenn. Ct. App. Apr. 17,
2002)). "[T]he defendant must intend to convert the
plaintiff's property." <u>Id.</u>

Plaintiffs allege ownership of the Sprint phones, and that
Defendants appropriated the Sprint phones for their own
benefit, and intentionally exercised dominion over the phones,
in defiance of Plaintiffs' rights. (Compl., ECF No. 1 ¶¶ 201-
15.)

Based on the allegations of the complaint, Plaintiffs have
established a claim for conversion against Defendants.
Plaintiffs are entitled to default judgment on that claim.

**12. Count 14: Unfair and Deceptive Acts and Practices**

A plaintiff may recover under the Tennessee Consumer
Protection Act ("TCPA") by establishing "(1) that the defendant
engaged in an unfair or deceptive act or practice declared

33

unlawful by the TCPA and (2) that the defendant's conduct

caused an 'ascertainable loss of money or property. . . .'"

Tucker v. Sierra Builders, 180 S.W.3d 109, 115 (Tenn. Ct. App.

2005) (quoting Tenn. Code Ann. § 47-18-109(a)(1)).

A "deceptive" act or practice is "one that causes or tends

to cause a consumer to believe what is false or that misleads

or tends to mislead a consumer as to a matter of fact."

Tucker, 180 S.W.3d at 116.  An "unfair" act or practice is one

"likely to cause substantial injury to consumers which is not

reasonably avoidable by consumers themselves and not outweighed

by countervailing benefits to consumers or to competition."

Id. at 116-17 (citation omitted).[5]

"An ascertainable loss is a deprivation, detriment, or

injury that is capable of being discovered, observed, or

established."  Discover Bank v. Morgan, 363 S.W.3d 479, 495

(Tenn. 2012).  "A loss is ascertainable if it is measurable,

even though the precise amount of the loss is unknown."  Id. at

496 (quoting State v. New Beginning Credit Ass'n, Inc., No.

M1999-00461-COA-R3CV, 2006 WL 1472284, at *8 (Tenn. Ct. App.

---

[5] A substantial injury "must be more than trivial or speculative;" it "usually involves monetary injury or unwarranted health and safety risks." Tucker, 180 S.W.3d at 117 (internal citations omitted).  "Even if an act or practice causes or is likely to cause substantial injury, it will not be considered unfair unless the injury is not reasonably avoidable by consumers themselves."  Id.  "Practices that unreasonably interfere with consumer decision-making include (1) withholding important information from consumers, (2) overt coercion, or (3) exercising undue influence over a highly susceptible class of consumers."  Id.

May 25, 2006)). An ascertainable loss in the trademark
infringement context that includes the trademark owner's lost
ability to control its brand image and reputation is not an
ascertainable loss without evidence of damages. See <u>CFE Racing
Prod., Inc. v. BMF Wheels, Inc.</u>, 793 F.3d 571, 596 (6th Cir.
2015)("[L]oss of control over one's reputation is neither
calculable nor precisely compensable." (internal citations and
quotation marks omitted)); <u>see also</u> <u>Taylor v. Thomas</u>, No. 2:12-
2309-JPM-CGC, 2013 WL 12033168, at *6 (W.D. Tenn. Dec. 17,
2013)(quoting <u>La Quinta Corp. v. Heartland Properties LLC</u>, 603
F.3d 327, 343 (6th Cir. 2010)(finding plaintiff's loss of
control of its service mark that led to the loss of value of
that mark and evidence of damages was sufficient to establish
ascertainable loss under the TCPA).

The complaint alleges that Defendants violated the TCPA
by:

> a. Causing a likelihood of confusion or
> misunderstanding as to the source, sponsorship,
> approval, or certification of goods or services;
>
> b. Causing a likelihood of confusion or
> misunderstanding as to the affiliation, connection or
> association between Sprint and Defendants;
>
> c. Using deceptive representations in connection with
> goods or services;
>
> d. Representing their goods or services have
> sponsorship, approval, uses, benefits, or quantities
> that they do not have or that they have sponsorship,

approval, status, affiliation, or connection to
Sprint that they do not have;

e. Representing that the goods are in original,
authentic, new condition; and,

f. Representing that their goods or services are
original, authentic, authorized Sprint quality
products when they are not.

(Compl., ECF No. 1 ¶ 217.) The complaint sufficiently states a

deceptive act under the TCPA.

The complaint also alleges that "Defendants' actions have

deprived Sprint of the means to control the quality of its

product and service. . . ." (Id. ¶¶ 158, 176.) That

deprivation, alone, is incapable of being fully quantified.

See Discover Bank, 363 S.W.3d at 495; see also Taylor, 2013 WL

12033168, at *6. Plaintiffs have failed to establish an

ascertainable loss arising from Defendants' deceptive acts.

Plaintiffs are not entitled to default judgment on this claim.

## B. Remedies

Plaintiffs seek a permanent injunction, $1,561,081.77 in

trebled damages for its trademark infringement claims, and

punitive damages. (ECF No. 47-1 at 498.)

### 1. Injunctive Relief

Plaintiffs seek a permanent injunction under the Lanham

Act and CFAA. (Id.) The Lanham Act gives courts the "power to

grant injunctions, according to the principles of equity and

upon such terms as the court may deem reasonable, to prevent
the violation of any right" protected under the Act.  15 U.S.C.
§ 1116(a).  CFAA provides that "[a]ny person who suffers damage
or loss by reason of a violation of [the Act] may maintain a
civil action against the violator to obtain . . . injunctive
relief or other equitable relief."  See 18 U.S.C. § 1030(g).

"A plaintiff seeking a permanent injunction must
demonstrate that it has suffered irreparable injury, there is
no adequate remedy at law, that, considering the balance of
hardships between the plaintiff and defendant, a remedy in
equity is warranted, and that it is in the public's interest to
issue the injunction."  Audi AG, 469 F.3d at 550 (internal
quotation marks omitted).  District courts "should limit the
scope of [an] injunction to the conduct which has been found to
have been pursued or is related to the proven unlawful
conduct."  Howe v. City of Akron, 801 F.3d 718, 753 (6th Cir.
2015); see also CFE Racing Products, 793 F.3d at 595 ("Courts
must closely tailor injunctions to the harm that they address."
(internal quotation marks omitted)).

First, Plaintiffs have established irreparable harm.  The
undisputed allegations in the complaint show that the
Defendants unlawfully acquire, unlock, and sell Sprint phones
outside the Sprint wireless network.  Plaintiffs allege that

they have suffered economic losses, dilution of the Sprint marks, and harm to their business reputations and relationships with retailers, dealers, and customers. Calculating reputational damage and lost sales is inherently difficult, if not impossible, and therefore constitutes irreparable harm and establishes the inadequacy of monetary damages. See Tom Doherty Assoc. v. Saban Entm't, Inc., 60 F.3d 27, 37–38 (2d Cir. 1995) (noting that "a loss of prospective goodwill can constitute irreparable harm"); see also Coxcom, Inc. v. Chaffee, 536 F.3d 101, 112 (1st Cir. 2008) (granting permanent injunction and finding irreparable harm based on the relative inability to detect cable piracy and the magnitude of lost programming revenues); DISH Network L.L.C. v. Whitcomb, No. 11-CV-0333 W (RBB), 2011 WL 1559825, at *3 (S.D. Cal. Apr. 25, 2011) (concluding that lost profits and subscribers resulting from the sale of DISH Network piracy devices constitutes irreparable harm); Macrovision v. Sima Prods., Corp., No. 05 Civ. 5587 (RO), 2006 WL 1063284, at *3 (S.D.N.Y. Apr. 20, 2006) ("If [the plaintiff] is unable to prevent the circumvention of its technology, its business goodwill will likely be eroded, and the damages flowing therefrom extremely difficult to quantify.").

Second, Plaintiffs have established that remedies available at law are inadequate to compensate for their injuries.  Absent permanent injunctive relief, Defendants could continue to infringe under the Lanham Act or CFAA.  Defendants' scheme is ongoing.  Their failure to appear suggests that their wrongful conduct will not cease absent a permanent injunction. There is no adequate remedy at law where there is a potential future harm from infringement.  <u>Audi AG</u>, 469 F.3d at 550.

Third, the balance of hardships weighs strongly in Plaintiffs' favor.  Plaintiffs are threatened with irreparable injury in the absence of a permanent injunction.  Injunctive relief would merely serve to force Defendants' compliance with the law.  <u>See</u> <u>Am. Auto. Ass'n v. AAA Recovery & Towing, LLC</u>, No. 3:15-CV-00211, 2017 WL 1207592, at *2 (E.D. Tenn. Mar. 31, 2017); <u>Benko v. Clearing Sols., LLC</u>, No. 1:16 CV 300, 2016 WL 1621972, at *1 (N.D. Ohio Apr. 21, 2016).

Fourth, Plaintiffs have demonstrated that injunctive relief would serve the public interest.  An injunction enjoining Defendants from using Sprint's Marks would advance the purposes of trademark law by preventing consumer confusion and deception in the marketplace and by protecting Plaintiffs' property interests in the Marks.  All four factors weigh in

favor of issuing permanent injunctive relief. Plaintiffs are entitled to a permanent injunction against Defendants.

Plaintiffs seek to permanently enjoin Defendants from the following:

1. [A]cquiring, purchasing, selling, unlocking, reflashing, altering, advertising, soliciting and/or shipping, directly or indirectly, any Sprint Phones or Products (including services);
2. [S]upplying Sprint Phones to or facilitating or in any way assisting other persons or entities who Defendants know or should know are engaged in the purchase or sale of Sprint Phones or hacking, altering, erasing, tampering with, deleting or otherwise disabling the software installed in Sprint Phones;
3. [E]ngaging in any of the conduct described in the Complaint as the "Handset Theft and Trafficking Scheme;"
4. [A]ccessing Sprint's computer networks either directly or through a Sprint representative, customer and/or a third-party;
5. [C]ontacting Sprint Customer Service, Sprint Telesales, and/or any other Sprint business, division, service or customer assistance departments, directly or indirectly, intentionally or unintentionally, to obtain Sprint Phones and/or Sprint Products and/or Sprint services and/or Sprint customer information;
6. [C]ontacting Sprint or any of Sprint's third party vendors, including without limitation United Parcel Service (UPS), directly or indirectly, for the purpose of acquiring Sprint Products, rerouting Sprint shipments, and/or obtaining or attempting to obtain information about Sprint shipments or their intended destinations;
7. [O]btaining or being in possession of any Sprint Phones, Products (including services) or Sprint customer information of any type;
8. [K]nowingly using the Sprint Marks or any other trademark, service mark, trade name and/or trade dress owned or used by Sprint now or in the future, or that is likely to cause confusion with

Sprint's Marks, without Sprint's prior written
authorization;
9. [H]olding themselves out as being associated with,
employed by or on behalf of, or acting as an
agent, representative or authorized partner of
Sprint; and,
10. [S]upplying Sprint Products to or facilitating
or in any way assisting, aiding or cooperating
with other persons or entities who Defendants know
or should know are engaged in any of the acts
prohibited under this Permanent Injunction,
including, without limitation, the acquisition of
Sprint Phones or Products (including services) or
contacting any division, department, employee,
agent, or affiliate of Sprint for the purpose of
obtaining Sprint Phones and/or Sprint Products
and/or Sprint services and/or Sprint customer
account information.

(Proposed Order ¶ 9.)

Plaintiffs are entitled to permanent injunctive relief.

Given Defendants' conduct, the scope of the proposed permanent

injunction is appropriate. The injunction is enforceable

against Defendants Eddie D. Danley and Irvin Bryan Lafayette,

not against Defendants Emanuel Lafayette and Marcus S. Hall.

## 2. Damages

Under the Lanham Act, a prevailing plaintiff on a

trademark infringement "shall be entitled, . . . subject to the

principles of equity, to recover (1) defendant's profits, (2)

any damages sustained by the plaintiff, and (3) the costs of

the action." 15 U.S.C. § 1117(a). "The court shall assess

such profits and damages or cause the same to be assessed under

its direction." Id. Plaintiffs seek an award of damages.

> "The general proof and measure of damages in a
> trademark action is governed by the law of damages of
> tort actions." <u>Broan Mfg. Co., Inc. v. Assoc.
> Distrib., Inc.</u>, 923 F.2d 1232, 1235 (6th Cir. 1991).
> "Under general tort principles . . . the
> infringer/tortfeasor is liable for all injuries
> caused to plaintiff by the wrongful act, whether or
> not actually anticipated or contemplated by the
> defendant when it performed the acts of
> infringement." <u>Id.</u> (citation and internal quotation
> marks omitted). "[D]amages are not permitted which
> are remote and speculative in nature." <u>Id.</u> (citation
> and internal quotation marks omitted). "[I]n
> trademark cases courts draw a sharp distinction
> between proof of the fact of damage and proof of the
> amount of damage." <u>Id.</u> Thus, "[t]he plaintiff is
> held to a lower standard of proof in ascertaining the
> exact amount of damages," and, "'[o]nce the existence
> of damages has been shown, all that an award . . .
> requires is substantial evidence in the record to
> permit a factfinder to draw reasonable inferences and
> make a fair and reasonable assessment of the amount
> of damages.'" <u>Chain, L.P. v. Tropodyne Corp.</u>, Nos.
> 99-6268/6269, 238 F.3d 421, 2000 WL 1888719, at *4
> (6th Cir. Dec.20, 2000) (unpublished table decision)
> (quoting <u>Broan Mfg. Co.</u>, 923 F.2d at 1236).

<u>La Quinta Corp.</u>, 603 F.3d at 342 (alternations in original).

Substantial evidence is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion."

<u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (additional

citation and internal quotation omitted).

Plaintiffs base their damages calculation on the

declaration of Clint Breithaupt, a Manager in the Fraud

Management Department of Sprint Corporation. (ECF No. 47-2.)

Breithaupt represents that "Defendants acquired at least 1,320

new Sprint devices." (<u>Id.</u> ¶ 5.) Breithaupt also represents

42

that "Defendants have fraudulently acquired and resold at least 646 smartphones, 423 feature phones, and 251 accessory devices." (Id. ¶ 6.)  Breithaupt states that losses to Sprint on the smartphones were $385,789.82, on the feature phones were $94,684.45, and on the accessory devices were $39,886.32.  (Id. ¶¶ 8-10.)  Breithaupt does not explain his calculation or his valuation of the phones and accessories.  He cites no evidence, and there are no exhibits attached to his affidavit.  A reasonable mind could not accept Breithaupt's affidavit alone, without explanation and evidence, to support Plaintiffs' damages calculation adequately.[6]

The basis for Plaintiffs' damages is within their knowledge and control.  To demonstrate a reasonable basis for damages, Plaintiffs must submit detailed calculations with supporting financial records or explanations.  Plaintiffs should clearly state their methodology.  See Taylor v. Thomas, 624 F. App'x 322, 328 (6th Cir. 2015) (acknowledging lower standard of proof as to damages amount and accepting evidence proved at trial); see also Yah Kai World Wide Enterprises, Inc. v. Napper, 292 F. Supp. 3d 337, 368 (D.D.C. 2018) (using tax

_____

[6] Plaintiffs seek treble damages under 15 U.S.C. § 1117.  The Lanham Act provides that a court may enter judgment "for any sum above the amount found as actual damages, not exceeding three times such amount."  15 U.S.C. § 1117(a).  Without clarity as to Plaintiffs' actual damages arising from Defendants' trademark infringement alone, the Court cannot calculate treble damages or determine the propriety of that enhancement.

returns to calculate lost profits).  Plaintiffs must file
support for their damages not later than July 6, 2018.

Plaintiffs also seek punitive damages under Tennessee law.
To recover punitive damages in Tennessee, Plaintiffs must show
by clear and convincing evidence that Defendants acted
intentionally, fraudulently, maliciously, or recklessly.
Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 (Tenn. 1992);
see also Rogers v. Louisville Land Co., 367 S.W.3d 196, 211
n.14 (Tenn. 2012) (noting that an award of punitive damages is
limited to "the most egregious cases" and is proper only where
there is clear and convincing proof that the defendant has
acted either "intentionally, fraudulently, maliciously, or
recklessly" under Hodges).  A default judgment is not itself
clear and convincing evidence.  See March v. Levine, 249 F.3d
462 (6th Cir. 2001).  A default judgment, however, "impliedly
constitutes an admission of all the properly pleaded material
allegations of fact contained in the complaint, except the
plaintiff's unliquidated damages." Discover Bank, 363 S.W.3d
at 495.

> A person acts intentionally when it is the
> person's conscious objective or desire to engage in
> the conduct or cause the result. Cf. T.C.A. § 39-11-
> 302(a) (1991) (criminal definition of "intentional").
> A person acts fraudulently when (1) the person
> intentionally misrepresents an existing, material
> fact or produces a false impression, in order to
> mislead another or to obtain an undue advantage, and

(2) another is injured because of reasonable reliance upon that representation. See First Nat'l Bank v. Brooks Farms, 821 S.W.2d 925, 927 (Tenn. 1991). A person acts maliciously when the person is motivated by ill will, hatred, or personal spite. A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances. Cf. T.C.A. § 39-11-302(c) (1991) (criminal definition of "reckless").

Hodges, 833 S.W.2d at 901.

The complaint alleges that Defendants fraudulently acquire Sprint phones and sell them to be used on other wireless carriers' networks. (Compl., ECF No. 1 ¶ 34.) The complaint alleges that Defendants secure the Sprint phones by masquerading as legitimate Sprint customers or employees. (See id. ¶¶ 37-41.) Defendants make thousands of calls to Sprint to obtain access to employee or customer accounts. (Id. ¶ 45.) Defendants devise methods of securing the devices through a network of individuals. (Id. ¶¶ 42, 48.) The devices are then dropped off and processed for resale by Defendants. (Id. ¶¶ 50-54.) Those allegations are admitted by Defendants. See Discover Bank, 363 S.W.3d at 495.

The admitted allegations are sufficient to show by clear and convincing evidence that Defendants acted intentionally, fraudulently, and recklessly. Plaintiffs are entitled to

45

punitive damages.  Their request for punitive damages is
GRANTED.

**V.   Conclusion**

For the foregoing reasons, Sprint's motion for default
judgment is GRANTED in part and DENIED in part.


So ordered this 22nd day of June, 2018.

/s/ Samuel H. Mays. Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT COURT JUDGE